## Shields' Admrs. v. Rowland.

(Decided December 10, 1912.)

### Appeal from Spencer Circuit Court.

1. Trial—Conduct of Counsel—Action of Court.—Where, upon a trial, counsel persists in asking questions, objected to as incompetent and so adjudged by the trial court, and being such as may influence the jury, it is the duty of the court to punish summarily the offending counsel, or failing in this, to award the unsuccessful litigant a new trial.

2. Witnesses—Impeachment—Character and Conduct—Accusation or Conviction of Crime.—Where a witness shows by his answer to a question that he was not convicted of a felony, further interrogation as to his indictment, trial or acquittal of the charge was error.

3. Assault and Battery—Civil Liability—Action—Evidence—Financial Condition of Parties.—In an action for assault and battery, the financial condition of the wrongdoer may be shown where punitive damages are authorized.

4. Assault and Battery—Provocation and Justification—Mitigation of
   Damages.—In such action, the use of abusive or insulting language
   by plaintiff toward the wrongdoer, while not a justification, may be
   shown as a circumstance in mitigation of punitive damages; and
   the jury should be instructed, in appropriate language, as to the
   purpose of such evidence.

5. Assault and Battery—Damages—In General—Exemplary.—In ac-
   tions for assault and battery, the measure of damages is such sum
   as will compensate plaintiff for mental or physical pain or suffer-
   ing, one or both, endured by him as the direct and proximate result
   of his injury. If the assault is wilful and without justification,
   exemplary damages may be awarded as punishment for the
   wrong.

6. Assault and Battery—Abatement and Revival—Death of Party
   Defendant.—An action for assault and battery does not survive,
   and where the defendant dies after judgment against him, and,
   upon appeal, the judgment is reversed, the action cannot be
   prosecuted against the personal representatives of the deceased
   wrongdoer.

JOHN S. KELLEY, S. K. BAIRD for appellants.

W. H. FULTON, FRANK E. DAUGHERTY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Revers-
ing.

C. M. Rowland instituted suit in the Nelson Circuit
Court against Dr. A. M. Shields, in which he sought to
recover damages for assault and battery. The case was
transferred to the Spencer Circuit Court, where, upon
a trial before a jury, the plaintiff recovered a verdict
for $750. Judgment was entered upon the verdict, and
the motion and grounds for new trial was overruled.
Thereafter the defendant died, and his personal repre-
sentatives perfected and prosecute this appeal, and
seek to have the judgment set aside upon several
grounds, chief of which are: First, misconduct of coun-
sel for appellee during the trial; second, error of the
court in admitting incompetent evidence; and third,
error in instructing the jury.

The facts, out of which the litigation grew, are as
follows: Appellee, a blacksmith by trade, was doing a
general blacksmith business in Chaplan in the east end
of Nelson County. Shields, the decedent, was a practic-
ing physician in the same town. Appellee had been do-
ing Shields' blacksmith work and, upon a day early
in January, 1910, was doing some work for him
on a buggy. Doctor Shields went to the shop

and complained of the manner in which it was being done. He and appellee walked out of the shop, under a shed adjoining it, and had some words about the business. They differ as to how the controversy arose. From the testimony of the witnesses, none of whom saw the beginning of the fight, it is not altogether clear how it began. Appellee testified that, when the doctor complained that the work was not satisfactory to him, he told him, if it was not, to take his work and go elsewhere; that thereupon the doctor struck him in the face; and, in this way, the altercation commenced. The doctor testified that he said to appellee that one of his horses had been improperly shod; that a crooked shoe had been put on the horse, and that it had lamed him; and thereupon appellee called him a damned liar, and then he struck him. Immediately following this, accoraing to the decided weight of the evidence, appellee knocked the doctor down as many as three times; and, after he had knocked him down the third time, the doctor drew his knife and advanced upon appellee, whereupon appellee seized a pair of bolt tongs and struck at him but missed him. Appellee thereupon seized a piece of iron, but, for some reason, failed to strike the doctor with the iron and backed into the office door, inside of which was a horse clipping or other machine, over which both fell. At this time the doctor was cutting at appellee with his knife, but, before any serious damage had been done, bystanders separated them, and the altercation ended. The doctor testified that appellee cut him with a knife upon both of his hands, during the altercation. Appellee denies this, and states that he had no knife; and no witness, other than the doctor, testifies to his having a knife, although two or three of the witnesses testify that, following the altercation, they saw wounds upon the doctor's hands, which looked like they might have been made by a knife or sharp instrument, and also rents in his clothing, which appeared to have been made by a knife. There is evidence introduced, to the effect that the clothing, which the doctor exhibited to these witnesses shortly after the difficulty, was not the same which he had on at the time of the altercation. The injury to appellee consisted of a gash on the side of the neck, which little more than drew the blood. It was an inconsequential injury. Immediately following this difficulty, the suit for damages, growing out of the assault, was filed.

Upon the trial, appellee's counsel attempted, by several witnesses, to show that, following the difficulty, appellee went into his house where his wife, who had shortly theretofore given birth to a baby and was sick in bed, upon seeing her husband and learning of the difficulty, became so nervous and frightened that she became sick and her flow of milk ceased, in consequence of which their young baby did not receive sufficient nourishment, and its growth and general health were greatly retarded and injured. Counsel for appellants strenuously objected to this line of interrogation, and the court sustained the objection; but, in spite of this fact, counsel for appellee proceeded with this line of interrogations until the jury could not have failed to understand that the effect of the injury inflicted by the doctor upon appellee had resulted in making the latter's wife sick, and materially injured the health and retarded the growth of the baby. The injury to appellee was slight; and, as the court did not authorize the jury to award punitive damages, we are unable to understand upon what theory $750 could have been awarded, unless it was, in a measure, to compensate appellee for the injury which resulted to his wife and baby, through the nervous shock received by her, when she discovered that her husband had been injured. Evidence of this character was evidently offered by counsel for appellee for the purpose of increasing the damage. He could have had no other possible end in view; and, when the trial judge had sustained the objection to this line of interrogation, counsel should not have pursued it further. We would not hold, if these questions had been asked but a single witness, that it was a reversible error; for counsel may have felt that, if the sickness of his client's wife and the injury to his child's health resulted from a nervous shock brought on by the sight of appellee's injury, at the hands of the doctor, he was entitled to recover for this as an element of damage. But, when the court had ruled against him and held that this evidence was not competent, it was error for counsel to proceed, in spite of the ruling of the court, in trying to bring these matters to the attention of the jury. Where the admonitions of the court are disregarded and his rulings, which should at all times guide counsel in the conduct of the trial, are ignored and a judgment is recovered which may, in part, be attributed to an advantage gained by an im-

proper line of interrogation, it should not be permitted
to stand.   There are two ways in which courts can con-
trol counsel and keep them within proper bounds, in the
conduct of trials.   One is, by summarily punishing the
offending counsel; and the other is, to deprive him of
the fruits of victory won while pursuing improper
methods.   The trial court, when he ruled that this line
of interrogation was improper, should have, by manda-
tory process, enforced obedience to his ruling.   Inas-
much as he failed to do this and the verdict of the jury
may have been influenced by this improper line of in-
terrogation, the trial court should have awarded appel-
lants a new trial upon this ground.   Marcum v. Hargis,
104 S. W., 693; L. & N. R. Co. v. Reaume, 128 Ky., 90;
L. & N. R. Co. v. Payne, 133 Ky., 539.

The next ground of complaint is that the court erred
in the admission of incompetent evidence.   Counsel for
appellee, when examining the doctor, asked him if he
had not been convicted of a felony, to which question
objection was made.   This was a proper question, and
the court correctly held it to be such; but, when it was
shown by the answer that he had not been convicted of
a felony, his further interrogation relative to a charge,
upon which he had been indicted, tried, and acquitted,
was error, and the evidence upon this point should not
have been permitted to go to the jury.

It is next insisted that the court erred in permitting
the doctor to be interrogated relative to his financial
condition.   This objection is based upon the idea that
appellee was not entitled to an instruction authorizing
an award of punitive damages.   The point would be
well taken, if no instruction authorizing punitive dam-
ages was, in fact, authorized; but, we are of opinion
that the trial court erred in holding, as a matter of law,
that appellee was not entitled to an instruction author-
izing punitive damages, if, as a matter of fact, the doc-
tor made an unprovoked, wilful, and malicious assault
upon appellee.   Indeed, we know of no case where an
instruction authorizing punitive damages could, with
more propriety, be given than in a case of this charac-
ter.   Punitive damages are allowed, not as a compensa-
tion for injury, but as a punishment for a wrong, wil-
fully and maliciously done.   If the allegations of the
petition are true, appellee was entitled to an instruction
authorizing an award of punitive damages.   Hence the
court did not err in permitting the introduction of evi-

dence bearing upon the financial standing of appellants' intestate.

The only remaining question is the complaint that the court did not properly instruct the jury. No serious objection can be raised to instruction number one. It presents the law of the case, both from the standpoint of the claim as asserted by appellee, and the defense as interposed by the doctor. Instruction number two did not fully present the measure of damages. Upon this point, the court should have told the jury:

"If you find for the plaintiff, you will award him such sum as, you believe from the evidence, will compensate him for the mental or physical pain or suffering, one or both, if any, endured by him as the direct and proximate result of his injury; and, in addition to actual damages, if you find from the evidence that the assault was wilful, malicious, and without justification, you may, in your discretion, award him punitive damages, not exceeding in all, however, the sum of $2,000, the amount claimed in the petition."

Instruction number three was unauthorized. The court seems to have been influenced, in giving this instruction, by the idea that there was, at sometime during this combat, a cessation of hostilities; and that there was evidence tending to show that appellee withdrew from the contest. We do not so view the evidence. From the testimony of all the witnesses, including the principals to the affray, it is apparent that there was but one difficulty. It was a continuous fight from start to finish. When so viewed, the instruction should not have been given. Just what effect this instruction had on the verdict of the jury cannot be determined. The jury may have believed the doctor's version of the difficulty, that appellee, in fact, assaulted him, and that he acted only in self-defense; and yet, under this instruction, they would have been warranted in finding against the doctor, if they regarded appellee as retreating, after he had knocked the doctor down the third time, a few steps just before he seized the bolt tongs. When viewed in this light, it is apparent that this instruction may have been highly prejudicial. It should not have been given.

There was evidence to the effect that before the doctor struck appellee, if he did strike the initial blow, appellee had used toward him abusive and insulting language, such as was calculated to provoke an assault.

Now, while evidence of such language cannot be given in justification of an assault, it was proper that it should have gone to the jury as a circumstance to be received by the jury in mitigation of exemplary or punitive damages, in the event the jury found against the doctor in any sum in excess of the actual damage, to which the evidence showed he was entitled. The court should have in appropriate language, told the jury the purpose for which this evidence was admitted.

For the reasons indicated, the judgment is reversed, with directions to the trial court to enter an order dismissing the petition, inasmuch as, under section 10, Kentucky Statutes, as construed by this court in Anderson v. Arnold, 79 Ky., 370; Lewis' Admr. v. Taylor Coal Co., 112 Ky., 845, it is an action which does not survive and cannot be prosecuted against the personal representatives of a deceased wrongdoer.