Reversing.
The appellee, Stevens, whom we shall refer to as the plaintiff, sued the appellant, United Shoe Repairing Machine Company, hereinafter referred to as the company, for $2,999 for assault for alleged permanent injuries received, mental and physical pain and anguish, mortification, humiliation, etc. A trial before a jury resulted in a verdict for $1,500 and judgment for that sum followed. The company made a motion for a new trial upon grounds which we shall state in our discussion of them, and, after considering same, the court made this order:
 "The Court being advised, it is ordered by the Court that if the plaintiff will remit $500.00 (Five Hundred Dollars) of the Judgment the motion of the defendant herein for a new trial will be overruled, otherwise the motion will be sustained."
Without excepting to this order, plaintiff filed remittitur as required.
Motion for new trial was then overruled, the company has appealed, and the plaintiff has prosecuted a cross-appeal.
The appellant company was the owner of a shoe repairing machine leased to the plaintiff. The plaintiff was 14 months in arrears in the payment of his rental of $5 per month or $70 all told. Statements sent him brought no response, and collectors had called on him without avail.
On May 11, 1926, M.R. Tanselle, the local representative of the company, and R.N. McDowell, of Cincinnati, Ohio, one of its field men, called on the plaintiff, and asked him for a settlement of this account. Plaintiff had promised Tanselle a week before to settle this that day. When they called, he was unable to pay, and they left telling him they must have a settlement. *Page 7 
They came back about noon. They asked for the money, and plaintiff told them he did not have it, but tendered a future dated check for a portion of it. McDowell refused to take the check. Plaintiff told them they could not get blood out of a turnip, and McDowell said to Tanselle, "We will have to take the machine," and directed him to disconnect the machine. Tanselle started to do so, whereupon the plaintiff took Tanselle by the shoulder and told him not to touch it. McDowell took the wrench from Tanselle, and squatting down, began to remove the screws by which the machine was fastened to the floor. The plaintiff then pulled or pushed McDowell, and he toppled backwards on his back. The plaintiff caught McDowell by the foot, and was dragging him out, so McDowell and Tanselle say, but the plaintiff says he was merely twisting his foot. In the struggle to free his foot McDowell jerked or pulled plaintiff down on top of him. At that point Tanselle reached down and took McDowell's glasses off, and at Tanselle's command the fisticuff closed, and both men arose, washed their hands, and rearranged their clothing. In this scuffle the plaintiff got one of his fingers hurt, which one he does not say, and of how it was hurt he gives but a meager account. We gather from the evidence that he received some sort of a blow on the end of it that loosened the flesh from the nail and caused it to bleed.
Whether McDowell struck him on the finger with the wrench, as plaintiff contends, or plaintiff struck his finger against the floor in falling, is sharply disputed. The plaintiff says that, after he let him up, McDowell said to him, "You son of a bitch, I'll kill you, I'll get that machine." McDowell denies making any part of that statement except to say he would get the machine.
Plaintiff claims his finger swelled, that he was unable to use it for four or five weeks, but he never saw a doctor about it, and the only treatment he claims to have given it was to put antiphlogistine on it for four or five days. He claims this finger still pains him in bad weather. For this the plaintiff sued, with the result noted.
The company's first complaint is directed to the evidence, and the court did err in the following respects:
The telegram from McDowell to the company after the fisticuff should not have been admitted, nor should plaintiff have been allowed to show the company had subsequently canceled plaintiff's lease, instituted an action *Page 8 
for possession of this machine, and had taken possession of it.
Counsel for the company objected to this evidence, the court sustained the objections, but counsel for plaintiff was unrelenting, and protracted his efforts to such an extent and propounded his questions in such a way that he by those questions let the jury learn just what was the evidence he was endeavoring to introduce. The court ultimately let it in. Were it not for the extent of these colloquies we would reproduce them, but in a similar situation we said:
 "He persisted in trying to get before the jury that Colby Gunterman was not a licensed chauffeur, the court uniformly ruling against him, and then came the attack on the affidavit, which the court allowed to be read as the deposition of Tompert. Again the court ruled against him. Such persistence upon the part of counsel was calculated to induce the jury to believe the court was improperly excluding such evidence and to cause the jury to disregard the court's admonitions. . . .
 "Such conduct should not be allowed to pass unnoticed. They cannot now say the jury observed the admonitions of the court and disregarded these matters, when they themselves did not observe the court's admonitions. We feel that, as proper punishment, the fruits of their victory should be taken from them."
See Gunterman v. Cleaver, 204 Ky. 62, 263 S.W. 683, 685. In the Gunterman case counsel carried these objectionable matters into his argument, and because of that we said:
 "It is the duty of the presiding judges of circuit courts, in jury trials, upon their own motion to interfere in such cases and to stop such argument."
See, also, Owensboro Shovel Tool Co. v. Moore, 154 Ky. 431,157 S.W. 1121. Another similar situation was presented in Shields Adm'rs v. Rowland, 151 Ky. 136, 151 S.W. 408, 410, and we said:
 "When the court had ruled against him and held that this evidence was not competent, it was *Page 9 
error for counsel to proceed, in spite of the ruling of the court, in trying to bring these matters to the attention of the jury. Where the admonitions of the court are disregarded and his rulings, which should at all times guide counsel in the conduct of the trial, are ignored and a judgment is recovered which may, in part, be attributed to an advantage gained by an improper line of interrogation, it should not be permitted to stand. There are two ways in which courts can control counsel and keep them within proper bounds in the conduct of trials. One is by summarily punishing the offending counsel; and the other is to deprive him of the fruits of victory won while pursuing improper methods."
The company complains of the excessiveness of the verdict, and we regard this ground as well taken. McDowell had no right without plaintiff's consent to disconnect the machine, and, when he started to do so, the plaintiff could have stopped him in a legal way. Plaintiff was lawfully in possession of this machine and he had the right to use such force as was necessary to maintain his possession, but no more. Mr. Tanselle testified that when McDowell, started to take out the first screw Stevens placed his foot over it. McDowell then moved to the next screw, and then it was that Stevens pushed him over and the difficulty occurred. McDowell's account is the same.
It would seem that all Stevens had to do was to put his foot on these screws to prevent the removal of them. That such was sufficient force was demonstrated, and it could well be argued that, when Stevens used further force and pushed or shoved McDowell over, he brought on the difficulty.
Any way, the difficulty followed in which Stevens claims to have received the injury to his finger. The proof relative to his alleged injuries and the circumstances under which he says he received them is such that the verdict for $250 compensatory and $1,250 punitive damages can be accounted for in but one way: that is, that the plaintiff's attorney by the offer of the evidence we have mentioned above and the unrelenting persistence by which he finally got it in so wrought upon the passions *Page 10 
and prejudices of the jury that their passions and prejudices were aroused and were reflected in the verdict.
The company complains of the action of the court in requiring plaintiff to remit $500 of his recovery, and contends the court had no right to do so, but we need not decide that question, as this judgment was still excessive after the $500 had been remitted.
Questions not discussed are reserved. The judgment is reversed.