# Webster v. Commonwealth.

(Decided Oct. 15, 1937.)

J. W. CAMMACK and J. L. VALLANDINGHAM for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

The appellant, Alvin Webster, was indicted and convicted in the Gallatin circuit court for the crime of stealing turkeys of the value of more than $2, and was sentenced to one year in the penitentiary. He has appealed from that judgment, insisting on a reversal on the grounds: (1) The evidence is insufficient to sustain a conviction, (2) the court erred in admitting incompetent evidence prejudicial to his substantial rights, and (3) the instructions are erroneous and prejudicial. We will consider these grounds in the order named.

G. L. Crune testified that on the night of December 2, 1935, sixteen of his turkeys were taken from his premises. He saw tracks leading from his turkey lot

to the public road. He called the sheriff of Gallatin county, and later received information that the sheriff had recovered or found the turkeys and had them in his barn and he went there and found thirteen of his turkeys and identified them by their color. He said they were gray turkeys known as Naragansett turkeys. He further testified that, after the indictment was returned against appellant, he (appellant) came to this home and asked him if he would compromise the case and keep it out of court. Mr. Crune told him that he was in no position to compromise the case and asked appellant if it was his truck in which the turkeys were hauled away, and appellant said, "It was my truck but I wasn't driving it." Mr. Crune then asked him if he knew who was driving the truck and he answered in the negative. However, appellant told Crune that he was not guilty.

Fred Lindsey Cobb testified that on the night the turkeys were stolen from the prosecuting witness, Crune, he (Cobb) had attended a picture show and got out about 11 o'clock and went down to his cousin's place and later, about 1:30 or 2 o'clock, he proceeded to go on home in company with J. M. Cropper. They came to the forks of the road and saw a red V-8 Ford truck parked on the side of the road about two miles from Owenton with the name "A. Webster & Son, Worthville, Kentucky," painted on the side of the truck; that the lights were turned off the truck and there was no one in it. They looked in the truck and saw turkeys in it lying in bunches in the bottom of the bed with their feet tied. He was asked and answerd as follows:

"What did you and Cropper do? Went to the house and got a flash-light and pistol and came out, took the light and looked in the truck there, we started down to the house about 75 or 100 feet from the truck, and a couple of fellows came out of the South Fork Road and jumped into the truck and before I got back to the truck they pulled out."

He said he could not identify the men but "looked like right good size fellows." He said he did not know the appellant, but appellant was pointed out to him in the courtroom and he was asked how he compared in size with the men whom he saw drive the truck away, and he said "he is a pretty good size fellow," but he could not say exactly how he compared in size with the men whom he saw in the truck. He said he told his father

what he had seen and his father called the sheriff and he, his father, and Mr. Ligon went with the sheriff to Carrollton in search of the turkeys and found them lying along the side of the road at different places and the first bunch they found was about a mile from the forks of the road where he saw the men jump in the truck and drive away. He said he saw the truck, or a truck answering the description of the one he saw on the road that night, at appellant's home at Carrollton on the next day and saw turkey feathers in it of the same color of the turkeys he saw in the truck. He went with the sheriff to Carrollton and went to where appellant had formerly lived, but he had moved. They finally located him and his truck and, in addition to the feathers found in the truck, he saw a string in it like or similar to the strings which he observed tied around the turkeys' feet when he saw them lying in the truck on the previous night.

J. M. Cropper testified that he was with Cobb on the occasion testified to by him and his description of the truck was in substance the same as that given by Cobb, except Cropper did not read the name or words printed on the truck.

Appellant in his own behalf testified that on the night the turkeys were taken from the prosecuting witness, he left his home at Carrollton on state road No. 227. He said he was not on state road No. 35 where the prosecuting witness lives. He said he met his brother, Earl Webster, at New Liberty and stayed there until around 10:30 or 11 o'clock and he and his brother went to his (appellant's) home in Carrollton and went to bed and did not leave Carrollton again on that night. He said he was at the place of business of a Mr. Brock at New Liberty and he saw a number of people there but he named none of them except J. W. Bond. He denied taking Mr. Crune's turkeys or having any connection with or knowledge of it in any manner, and denied telling Mr. Crune that it was his truck in which his turkeys were taken, saying that Mr. Crune was mistaken about him making that statement. He admitted that he talked to Mr. Crune about compromising the case, and said that his wife was worried about the matter and for that reason he sought a compromise. His brother, Earl Webster, corroborated appellant in his statement that they met at New Liberty on the night in question and said that he went home with appellant and they stayed there that night. Appellant's son, Harley Webster, testified that

his father and uncle came home on the night in question and went to bed at 10 minutes before 1 o'clock and he heard no one leave the house again on that night. J. W. Bond testified that he saw appellant at New Liberty on the night in question and that appellant left there between 10 and 11 o'clock but he did not know which way he went when he left and that he saw no one with him. It is shown by this witness that the nearest route of travel from New Liberty to where the prosecuting witness lives is about 12½ miles.

It is insisted on behalf of appellant that there is no evidence of a substantial or probative value tending to establish the guilt of appellant and at the most it creates only a mere suspicion. We are unable to accept that view of the evidence. It is shown by the evidence of J. W. Bond that appellant left New Liberty between 10 and 11 o'clock on the night in question and that by a certain cross-road route it is only 12½ miles from New Liberty to where the prosecuting witness lives on state road No. 35. It is common knowledge that this was only a few minutes travel by motorcar. It is shown that a truck of the exact description of appellant's truck was seen at the intersection of the south fork road on route No. 35 a few miles from where the turkeys were taken, at about 1:30 or 2 o'clock a. m. It it not shown nor indeed no attempt was made to show that there was any other truck in Carrollton, New Liberty, Owenton, or in any other section of that community bearing marks and description of appellant's truck. It was also shown that turkey feathers and strings, like or similar to the turkeys and string seen in the truck by the witnesses Cobb and Cropper, were found in appellant's truck. We think the proven facts and the well-connected circumstances furnish evidence of substantial and probative value. It is the well-known rule that, where there is any evidence, direct or circumstantial, it is proper to submit the case to the jury and, the jury being the sole judge of the weight to be given the evidence and the credibility of the witnesses, its finding will not be disturbed by the court. We are not unmindful of the rule that, although there may be a scintilla of evidence sufficient to take a case to the jury, yet, a verdict of conviction on a mere scintilla might be flagrantly against the weight of the evidence. However, we do not think the present case falls within that rule, but that the evidence is sufficient to sustain the verdict of the jury.

The incompetent evidence complained of is that the prosecuting witness was asked if any one else in the community lost any turkeys on the night his turkeys were taken, and he said that Mr. Young lost some turkeys on that night. The objection to this evidence is based upon the rule that evidence of another crime should not be permitted but should be confined to the offense set out in the indictment. The witness was not asked nor did he state that appellant took Mr. Young's turkeys, nor was there any evidence tending to connect appellant with the taking of Young's turkeys. The witness merely stated that Mr. Young lost some turkeys. Conceding that the question was improper and that the court should have sustained the objections to it, yet we do not think it was prejudicial or had any controlling influence on the verdict of the jury. At another point in the evidence some question was asked or reference made to Mr. Young's turkeys and the court admonished the jury that that had nothing to do with this case. In view of the substantial evidence tending to connect appellant with the theft of the turkeys, it is not reasonable to presume that the reference to Mr. Young's turkeys had any controlling effect on the jury's verdict. Error not prejudicial to the substantial right of a party are not grounds for reversal. Sections 340, 353, of the Criminal Code of Practice:

Lastly, it is insisted that instruction No. 1 given to the jury by the court is erroneous. That instruction reads:

"No. 1. The court instructs the jury that if they believe from the evidence in this case beyond a reasonable doubt that in Gallatin County, Kentucky, on the 2nd day of December, 1935, and before the finding of this indictment herein the defendant, Alvin Webster, did with force and arms unlawfully and feloniously take, steal and carry away sixteen turkeys, or any turkeys, of the value of more than two dollars, the personal property of G. L. Crune, with the fraudulent intent to convert said turkeys to his own use and to deprive said owner of his property therein permanently, you shall find the defendant guilty as charged in the indictment and fix his punishment at confinement in the penitentiary for not less than one year and not more than five years."

The objection urged to the instruction is that the

court failed to include in it the requirement that the jury must believe that the taking of the turkeys was without the consent of the owner. It is the general rule that instructions should follow substantially the language of the indictment. Under the circumstances of some cases it is a reversible error not to include in the instruction the language or averment contained in the indictment necessary to state an offense. In the case at bar the evidence does not in the least involve the question of consent. The prosecuting witness testified that his turkeys were taken in the nighttime and he knew nothing about it until he missed them on the following morning. Appellant denied taking the turkeys at all and denied that he was in that community on the night the turkeys were taken. It is at once apparent that the controlling question in the minds of the jury was whether or not appellant took the turkeys. We are unable to see wherein the substantial rights of appellant were prejudiced by the failure of the instructions to include the omitted language complained of. Having these views it is our conclusion that the error complained of is not sufficient to authorize a reversal of the judgment.

Finding no error prejudicial to the substantial rights of appellant the judgment is affirmed.

Whole court sitting.