**William SHELTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 15, 1971.

James F. Clay, Jr., Clay & Clay, Danville, for appellant.

John B. Breckinridge, Atty. Gen., M. Curran Clem, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Jr., Judge.

Appellant was tried by a jury, found guilty of robbery, and his penalty fixed at 10 years in prison. He presents two specific grounds for reversing his conviction and a third "Mother Hubbard" ground containing a number of claimed prejudicial errors which we shall discuss later. Inasmuch as we are reversing the judgment for error in the instructions, most of the appel-

lant's arguments in his third assignment of error will require no discussion since they may not appear on a second trial.

Before discussion of the arguments, a brief statement of the facts may be helpful. About 11 p. m., on June 17, 1970, the appellant along with three other young men went to the home of Kenneth Denson and obtained the consent of Mr. Denson to play some records on his stereo. Denson testified that after a time one of the four young men struck him over the head and rendered him unconscious. After he regained his senses, he found the four had absconded and he was short some of his personal property—but was long on bruises and injuries. The four were arrested at Lebanon, Kentucky, about 4:30 the following morning in possession of some of Denson's property. Other items had been previously sold to Eulas Johnson.

The appellant was tried jointly with the other three defendants. He was the only one of them to testify in the defense, and the only one to appeal to this court. His defense was that although he admitted owning the automobile in which the four went to the home of Denson, due to a high state of intoxication he relinquished the driving of the car to another member of the group; he was asleep on the bed in Denson's home when the crime was committed and was asleep later when some of the property of Denson was sold to Eulas Johnson; he continued to sleep when they were apprehended and arrested some four hours after the crime and knew nothing whatsoever of the crime. But it should be noted here, as bearing upon the sufficiency of the evidence to support the verdict, Denson testified that shortly before he was attacked he saw the appellant sitting upright in a chair some twelve feet away.

The indictment charged the appellant and the other three defendants with robbery, a common law offense denounced and penalized by KRS 433.120, which carries a penalty of two to ten years in prison, but this statute does not define robbery. The trial court in its instruction number one did not

include one of the essential elements of robbery, to wit: force, or the placing of the subject of the crime in fear. Actually, the instruction given defined larceny under KRS 433.220, which carries a penalty of one to five years in prison. In effect the instruction authorized the jury to find this appellant guilty of larceny and to fix his penalty under the robbery statute, which provides a greater penalty. We consider this instruction erroneous. Head v. Commonwealth, 211 Ky. 41, 276 S.W. 1061 (1925); Hudspeth v. Commonwealth, 195 Ky. 4, 241 S.W. 71 (1922); New Kentucky Criminal Law and Procedure, Roberson, 2nd ed., § 1719.

It may be noted here that the Commonwealth relies upon the case of Webster v. Commonwealth, 270 Ky. 180, 109 S.W.2d 589 (1937), which grew out of a prosecution for stealing turkeys. The indictment charged and the proof established that Webster stole the turkeys at night without the owner's knowledge or consent. The instructions did not require the jury to find that the turkeys were taken without the consent of the owner. The court held that there was no issue as to the victim's consent, and therefore the omission was not prejudicial.

 We do not think that Webster, supra, is controlling in the present case. The appellant's defense was that he did not participate at all or know anything about the crime due to his being intoxicated. So far as the appellant is concerned, it was a real and important issue in the case. We conclude that the instruction was erroneous and prejudicial and reverse the judgment.

 We now discuss briefly the appellant's contention that the evidence was not sufficient to uphold his conviction. From the allusions which we have made heretofore, we think it was sufficient to uphold the verdict.

 Included in appellant's "Mother Hubbard" argument is the contention that he was prejudiced by having to pay all the cost of reporting the case because the other defendants were insolvent and he was the only solvent one. We cannot understand in what way he could have been prejudiced by his good fortune at having sufficient estate to pay the reporter's fee. The separate trial rule does not envision a financial burden.

 He also complains of prejudicial argument by the Commonwealth's Attorney and that he was denied the right to compel the testimony of his codefendants. Insofar as the claimed prejudicial argument of the Commonwealth's Attorney is concerned, it is unlikely that it will occur on another trial, so we shall not encumber the record by quoting it or by discussing it further. On another trial, his codefendants cannot claim the Fifth Amendment to the Constitution of the United States relative to self-incrimination. Since they were convicted and have not appealed, their convictions are final. They will therefore be competent witnesses on another trial in the event the appellant desires to take a chance on using them.

The judgment is reversed with directions to grant the appellant a new trial.

All concur.