## Fallis v. Commonwealth.

(Decided January 19, 1923.)

### Appeal from Franklin Circuit Court.

1. Criminal Law—Resisting Arrest—Evidence—Showing Another Offense—Competency.—Where one, after the commission of a crime, flees from the place, and either evades or actively resists arrest, all facts and circumstances showing the evasion or resistance, even though they disclose the commission of another crime, are competent against him on a trial for the first offense.

2. Criminal Law—Arrest—Evidence of What Occurred at Time of.—On the trial of one charged with shooting an officer who had arrested and was in custody of defendant's son, the court properly declined to permit evidence of what actually took place at the time of the arrest and subsequently when defendant was not present, but properly admitted, by way of extenuation, evidence of what had been communicated to defendant about the arrest and treatment of his son thereafter. It was this information which furnished the extenuation, and not the actual occurrences.

LESLIE W. MORRIS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

Appellant was indicted for a felony under the provisions of section 1166, Kentucky Statutes, and charged with the shooting and wounding with intent to kill of Guy Wainscott, a policeman of the city of Frankfort. On his trial, however, he was convicted only for shooting in sudden affray or in sudden heat and passion without previous malice, a misdemeanor, and a degree of the crime charged, and his punishment fixed at confinement in the county jail for six months and a two hundred and fifty dollar fine.

Having been refused a new trial he has appealed.

The evidence shows appellant had a young son, Carlos, then seventeen years of age; that there was being conducted on a lot somewhere in the rear of the Old Capitol grounds in Frankfort a street fair or carnival, and that Carlos and some of his young companions were there; that he and two or three of them went up on the roof of a shed on the grounds of an adjoining lot, and were from that point witnessing an exhibition being given at the carnival; that they were requested to come down from that point by some officer or agent of the carnival company, and did so; that shortly thereafter a policeman, Taylor, appeared and got into an altercation with Carlos which resulted in the arrest of the latter; that the policeman went toward police headquarters with his prisoner when he was met by two other policemen, Wainscott and Wilhelm, who thereafter proceeded with him toward the police station; that they went through the Old Capitol grounds, thence a short distance up Broadway, and then up Lewis street; that just as they reached the intersection of Main and Lewis streets appellant overtook them and went around in front of them on Main street, demanded the release of his son and immediately shot Wainscott twice and Wilhelm, another policeman, once and shot at Taylor but missed him; he then took charge of his son, returned to his home and ordered everybody, including his wife and children out of the house, saying that he had shot two policemen and there might be further trouble; shortly thereafter four other policemen, including the chief of police, appeared at his home and demanded his arrest, which was refused, and by a shot or shots fired by him from the house two other policemen, Noonan and Colston, were also wounded.

It appears further from the evidence that after the altercation between Taylor and Carlos at the carnival grounds, one of Carlos' young companions went to the home and grocery of appellant—the same house—and told him his son had been arrested and was being abused by the policemen, and immediately upon receiving this information appellant procured his pistol and rushed up the street in the direction the officers were going, and in going through the Old Capitol grounds fired his pistol twice in the air, evidently hoping to intimidate the officers who were then only a short distance from him and thereby procure the release of his son. He proceeded to follow the policemen, and, as stated above, overtook them at or about the intersection of Main and Lewis streets, and, as shown by the evidence for the Commonwealth, went around them out into Main street and said, "That is my boy, turn him loose," and immediately fired on Wainscott. The only material conflict in the evidence as to what occurred immediately at the time of the shooting is that appellant and some of his witnesses testified that after demanding the release of his son by the officers he waited an appreciable time before beginning to fire and that during that time two of the policemen had started or made movements as if to draw their weapons; while the evidence of the three policemen and others is to the effect that they did not see appellant until he fired the first shot and were not until then aware of his presence; the officers say that they did not then know the name of the boy they had under arrest or that he was Fallis' son; that they heard the two shots that had been fired behind them in the Old Capitol grounds but thought at the time it was an automobile back-firing and had no warning of an effort by anyone to release the prisoner, and this view is strongly borne out by the fact that one of the policemen had no arms at the time.

One witness states that when appellant reached his home after shooting the first two officers and releasing his son, he ordered everybody out of the house, including his family, and "He said he killed two policemen and that he might have to kill some more;" while his own version of what he then said is that he told his wife the police were following him with guns and she and the children had better get out, that he had shot two policemen up town and somebody might get hurt. He then undertakes to justify the resisting of arrest by saying he believed it would not be safe for him in the hands of the officers,

that there was great excitement in town growing out of the shooting, and he makes this plea of justification in the face of his claim that he had shot the two policemen in self-defense, admitting at the same time that scores of people had witnessed the shooting. He admits he resisted arrest, and in reciting the facts, apparently boasts of his successful resistance.   He admits that shortly after shooting the last two officers he fled from the city and remained a fugitive for several days when, acting under the advice of a friend, he surrendered to the authorities.

One witness for the Commonwealth states that he saw appellant running as hard as he could up Lewis street, and just as he reached the corner of Main and Lewis streets he said, "I will kill every damn son-of-a-bitch that has hold of my boy," and then shot.   Appellant's own version of what he then said is, "He is my boy, turn him loose."   It is also in evidence that after he had shot the first two policemen and had fired the fourth shot at another—the only three officers then present—he then dropped his pistol to his side and said, "Now, by God, I reckon you will take them to the hospital."

And all this happened on the main thoroughfare of the capital city of the great state of Kentucky on an otherwise placid evening in June about eight-thirty when the street was lined with people and automobiles—one automobile occupied by women having been penetrated by one of appellant's shots—and appellant is complaining on appeal of conviction for a mere misdemeanor.

The grounds for reversal are, (1) that the court erred in admitting evidence of the occurrences at appellant's home when Noonan and Colston were shot; and (2) that the court  erred in refusing to permit appellant to introduce evidence concerning the alleged unlawful arrest of his son, and of the manner in which he was alleged to have been mistreated by the police officers at the time of and after his arrest.

The argument under the first heading is that it was error for the court to permit evidence of what counsel conceives to be wholly independent, distinct and unconnected offenses by appellant occurring at his residence some thirty or forty minutes after the shooting of Wainscott.   In our view of the law, however, it is wholly unnecessary to determine in this case whether the acts of appellant at his home, as shown by the evidence, constituted offenses wholly independent, distinct and uncon-

nected with his acts shortly previous thereto at the corner of Lewis and Main streets.

There is another rule of evidence which, wholly independent of that question, makes such evidence competent in this case, and that is where one after the commission of a crime flees from the place, and either evades or actively resists arrest, all facts and circumstances showing the evasion or resistance of arrest, even though they disclose the commission of another crime, are competent against him upon a trial for the first offense. The sound reason for this is that the fact of evading arrest, and *a fortiori*, the fact of actively resisting arrest, not only are competent to show the consciousness of guilt by the defendant himself, but his acts and conduct while so evading or resisting arrest are competent as showing his state of mind and the motive actuating him at the time of the commission of the first offense.

This rule of evidence is by no means new. It has been stated, recognized and applied by this court more than once. As said in the case of Nicely v. Commonwealth, 22 R., 901,

"It has been repeatedly held that the fact of attempting to evade an arrest by a party charged with crime was always competent."

The same principle was again stated in the case of Aiken v. Commonwealth, 24 R. 523. In that case the defendant had been discharged on an examining trial, but was afterwards indicted, and subsequently evaded arrest. The court said:

"Although appellant was discharged on the examining trial, when he afterwards knew he had been indicted proof that he was then evading arrest was properly admitted in evidence, for flight or concealment then was as significant as if he had had no examining trial."

Again, in Turpin v. Commonwealth, 140 Ky. 294, in considering a kindred question this court said:

"If one accused of crime flees, or attempts to bribe a witness, or a juror, or to fabricate evidence, all such conduct is receivable as evidence of his guilt of the main fact charged. It is in the nature of an admission. For, it is not to be supposed that one who is innocent and conscious of the fact would flee, or would feel the necessity for fabricating evidence."

The rule is thus stated in 16 C. J., page 553-4:

"It is proper to admit evidence of the arrest of accused and the attending circumstances, including the

place of arrest, the persons then in the company of accused, the acts and conduct of accused, his declarations, his resistance of arrest, and an attempt on his part to evade, escape, or avoid arrest. Evidence of a threat to resist arrest is admissible, whether a part of the *res gestae* or not. In showing that accused resisted arrest, it is proper to allow the witnesses to give a connected story detailing all the circumstances, even though it becomes necessary to testify to a separate crime, such as the killing of one of the posse.''

The same principle is recognized and stated in 8 R. C. L., p. 192.

From what has been said it is apparent that the court did not err in admitting evidence of everything that occurred at the home of appellant after the shooting on Main street.

On the second question there is little difficulty. It is admitted that at the time of the arrest of the boy and until the officers having custody of him almost reached the corner of Lewis and Main streets appellant himself was not present, and had no personal knowledge of the facts and circumstances leading up to the arrest of the boy or what occurred while the boy was in custody of the officers. The defendant offered to prove by Carlos and other witnesses certain facts tending to show that his arrest in the first place was unlawful and unwarranted, and that the officers thereafter while he was in their custody had, without reason or justification, beaten and bruised him. This evidence the court refused to permit, but did permit appellant to detail at length the information which had been communicated to him as to the arrest of his son and the alleged mistreatment by the officers of him thereafter, and permitted the young man who communicated this information to detail in substance the information so communicated.

The court properly declined to go into the facts with reference to the collateral issue whether appellant's son had or not been unlawfully arrested, and properly refused to hear the evidence about his alleged mistreatment while in the custody of the officers. Whatever that evidence might have disclosed bearing upon the unlawfulness of the arrest, whatever it might have disclosed as to the treatment of the boy while in the custody of the officers, it could not have justified the unlawful conduct of defendant when he came upon the officers and saw with his own eyes that his son was under arrest. It was his

duty as a citizen to appeal to the law to have these wrongs, if any had been committed, righted through the proper channels, and not to violently take into his own hands the avenging of them.

The court properly admitted by way of extenuation the evidence of what had been communicated to appellant about the arrest and subsequent occurrences when he was not present. It was this information which furnished any extenuation for appellant's conduct, and not the actual occurrences themselves to which he was not a witness.

The whole evidence shows a flagrant case of taking the law into his own hands, and a total lack of respect for the orderly administration of the law. His every act and word after receiving information of his son's arrest show his determination to forcibly rescue his son, and if necessary to do violence to the officers; he assumed in advance to sit in judgment and pass upon the question of the legality of his son's arrest. The punishment meted out to him by the jury was woefully inadequate, and we are at a loss to understand the dissatisfaction with it.

Judgment affirmed.