## Kelly v. Commonwealth.

(Decided October 7, 1924.)

### Appeal from Boyd Circuit Court.

1. Disorderly House—Evidence Held Sufficient to Sustain Conviction.—Evidence held sufficient to take case to jury, and sustain conviction for keeping disorderly house.

2. Disorderly House—Public Peace and Quiet Need Not be Disturbed, in Order to Show Keeping of Disorderly House.—It is not essential that there be disroder or disturbance, in sense that public peace or quiet of neighborhood is disturbed, in order to render one guilty of keeping disorderly house; it being sufficient that acts done are contrary to law and subversive of public morals.

3. Criminal Law—Use of Word "Circumstances" in Instruction Held Not Erroneous.—Word "circumstances" in instruction, "if you shall believe from the facts and circumstances proven in evidence to exclusion of a reasonable doubt, etc.," was not prejudicially erroneous, as authorizing consideration of something other than evidence.

4. Criminal Law—Jury are Authorized to Consider Circumstances Proved in Evidence.—Jury are authorized to consider circumstances proved in evidence; circumstances being evidence, just as facts are.

CISCO & CISCO for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

The appellant, Charles Kelly, prosecuted this appeal from a judgment of the Boyd circuit court adjudging that he pay a fine of $300.00 and be imprisoned in jail for six months for keeping a disorderly house.

He contends that the verdict is not sustained by sufficient evidence. The Commonwealth introduced as witnesses Miss Hazel Boyd and Mrs. James Mankins, who testified that they lived in homes adjoining that of appellant, and that for the year preceding the date of the return of the indictment they had observed that a great many people, men and women, black and white, had resorted to appellant's home both by day and by night. Miss Boyd testified that she had seen people leave appellant's home carrying jugs and others carrying small packages which she could not identify; that they would enter Kelly's home empty-handed and leave it with the packages indicated. Mrs. Mankins, while not testifying that she had ever seen anyone leave Kelly's home with a jug, testified that those whom she saw going to and leaving his home would enter it empty-handed and leave carrying small packages. Miss Boyd testified that frequently at night strangers would come to her front door making inquiry as to where Kelly lived. She testified also that frequently she had heard noises at Kelly's home that sounded like bottles or jugs rattling. The Commonwealth introduced Ezra Walker as a witness, who testified that shortly before the indictment was returned he went to Kelly's home and purchased from him a half pint of ''moonshine'' whiskey for which he paid $1.00. He testified that Kelly was in his back yard when approached by him and that he went into and got the whiskey from his residence. He testified that was the only whiskey he had ever purchased from Kelly at his residence, but that previously he had often obtained it from him at his shooting gallery. It appears that Walker was arrested almost immediately after purchasing the whiskey and carried to police headquarters in Ashland. There he told of having purchased the whiskey from Kelly and a warrant of arrest was issued for Kelly. The witness testified that between that date and the time set for the trial of the warrant Kelly took him to Columbus, Ohio, and gave him $20.00 to remain away and not testify against him. The defendant denied having sold the whiskey to Walker or that he ever kept any whiskey at

his home or that any unusual number of people frequented his home or that anyone had ever purchased whiskey at his home. He denied having carried the witness, Walker, to Columbus or having paid him $20.00 to remain away and not testify against him. He admitted on cross-examination, however, that he and the witness made the trip to Columbus, Ohio, in the same taxicab, but stated that it was merely by chance they did so, and that the twenty dollar transaction arose out of his purchasing from the witness the claim the witness had against the C. & O. railroad for time he had worked for it. He stated he did this merely to accommodate the witness and not for the purpose of procuring the witness to stay away from the trial and so as not to testify against him. Defendant introduced also as witnesses his stepfather-in-law, a policeman of Ashland, who lived in part of a double house with him, and a justice of the peace of Boyd county, who lived in adjoining property, and by them proved that they had never seen any unusual number of people go to or from Kelly's home or any suspicious or disorderly conduct in or about it. This in brief is all the testimony introduced upon appellant's tral.

In 79 Ky. 362, on this subject, we said:

"A disorderly house, in its restricted sense, is a house in which people abide, or to which they resort disturbing the repose of the neighborhood; but in its more enlarged sense it includes bawdy-houses, common gaming-houses, and places of like character, to which people promiscuously resort for purposes injurious to the public morals, or health, or convenience, or safety. Nor is it essential that there be any disorder or disturbance in the sense that it disturbs the public peace or the quit of the neighborhood. It is enough that the acts done are contrary to law and subversive of public morals, and the result is the same whether the unlawful acts are denounced by the common law or by statute."

From the facts and circumstances proved upon appellant's trial below, we are of the opinion that there was sufficient evidence to warrant the submission of the question to the jury as to whether or not appellant was guilty of maintaining a disorderly house. As said in the opinion above, it is not essential that there be disorder or disturbance in the sense that the public peace or quiet of the neighborhood is disturbed, but it is sufficient

if the acts done are contrary to law and subversive of public morals. There was the positive proof of one sale of whiskey and facts and circumstances from which the jury might reasonably infer that an unusual number of people of both sexes and races were resorting to appellant's home and there unlawfully purchasing whiskey, and we can not say that the verdict of the jury was flagrantly against the weight of the evidence.

Appellant complains of that part of the instruction given by which the court instructed the jury "if you shall believe from all the facts and circumstances proven in evidence to the exclusion of a reasonable doubt, etc." Appellant quotes the following excerpt from Greer v. Commonwealth, 23 Rep. 489, 63 S. W. 443, in support of his contention that the use of the word "circumstances" in the instruction was prejudicially erroneous::

"The word 'circumstances' should be omitted from the instruction, because the evidence which is permitted to go to the jury may be parol, documentary, and circumstantial, all of which is embraced in the word 'evidence' which is ordinarily used in an instruction. To use the word 'circumstances' might be misleading to the jury, and therefore it is best to omit it."

The difference between the two instructions that made the use of the word "circumstances" objectionable in the Greer case and harmless in this is that in the Greer case the instruction read, "if you shall believe from the evidence and circumstances proven in the case," whereas, by the instruction in this case, the jury were told, "if you shall believe from all the facts and circumstances proven in evidence." As written in the Greer case, the jury might have concluded that they were authorized to go beyond or take into account something more than the evidence in making their verdict. No such objection can be made to the instruction given in this case. The jury were authorizel to consider only the facts and circumstances proved in evidence. Circumstances are evidence just as facts are, and it was proper for the jury to take into account the circumstances as well as the facts proved against appellant. The instruction given was not erroneous.

Upon the whole case we perceive no error to the prejudice of appellant's substantial rights, and the judgment is affirmed.