## Noah v. Commonwealth.

(Decided April 22, 1938.)

HENRY F. TURNER, JR., and J. BRANDON PRICE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Robert Noah, here appeals from a judgment convicting him of voluntary manslaughter and sentencing him to imprisonment for a term of five years and one day.

The accused, Robert Noah, was indicted by the McCracken grand jury, by which he was charged with the willful murder of Paul Bean, described as committed by feloniously and maliciously cutting and stabbing Bean with a knife, from which he thereupon died.

The first trial of the appellant upon this charge resulted in a mistrial. Upon the second, the jury returned a verdict finding the accused guilty of the lesser offense of voluntary manslaughter and fixing his punishment therefor as stated above.

Complaining of this judgment and verdict thereon, as being palpably and flagrantly against the evidence heard upon the trial, and insistently urging that the verdict is not supported by any evidence and that the court erred in failing to sustain defendant's motion for a directed verdict of acquittal, this appeal is prosecuted, asking that the judgment be reversed and a new trial granted.

This appeal being thus prosecuted upon substantially the one ground of objection, that the verdict is flagrantly against and unsupported by any evidence, it is incumbent upon us to here make a somewhat full and detailed statement of the evidence upon which this ver-

dict was reached. However, the record of the trial is so brief, that a statement of the facts and circumstances surrounding the killing, as shown by the proof, must also be but brief.

These facts and circumstances, as disclosed by the evidence, are, that at about 10 o'clock of the evening of October 6, 1937, the appellant, Robert Noah, went with two of his friends, Raymond Coleman and A. G. Mulligan, to the negro roadhouse of Tuck Lowe in the city of Paducah, where Lowe maintained an upstairs dance hall, connected with a beer garden and lunch counter on the ground floor by a stairway, about midway of which is a ''landing'' or turn, some seven steps up from the first floor.

It appears that, upon arriving at this roadhouse, the appellant and Coleman first went up to the dance hall, when, after watching the dancing awhile, they started down the stairway to the beer garden; that, as they were going down, they met the aforesaid Mulligan and the deceased, Paul Bean, standing on this stairway landing, engaged in a quarrel about a handkerchief. Appellant and Coleman finding the passway down the steps obstructed by Mulligan and Bean, appellant states that he stopped and asked what was the matter, when he was accosted by the deceased, Bean, who asked him what he was looking at and ''did he see any g. d. matter in his eye.'' Appellant says he replied that he had meant no harm by looking, to which Bean retorted, ''I will mash your g. d. glasses in your eye,'' as he turned and strick him twice, when they both went into a rough and tumble fight, advancing down the steps to the floor below as they grappled and fought and there continuing their fight, as the appellant stood with his back to the wall, holding and hugging the deceased around his neck and shoulders.

While this brawl was taking place, the combatants were closely surrounded by many onlookers, who gathered about them watching the conflict, but without anyone's interfering or participating in the melee, until it was brought to an end by some of the crowd breaking them loose and separating them, when the evidence is that the appellant and Coleman then both immediately left the place, while the deceased, Bean, at once started back up the steps and had gotten almost to the top, when suddenly he stopped and fell, mortally wounded, backwa down the steps to the stairway landing, due

to his having been, during the fight, fatally cut and knife-stabbed in the back, from which he died at the hospital the following morning.

The proof introduced by the Commonwealth to establish appellant's charged guilt of having committed this homicide, and showing the facts and circumstances under which it was committed, consists of the testimony of a number of those who were present in this beer room of Lowe's place, when and where the crime was committed, and who were eyewitnesses of this fight in which Bean was cut and killed, from its beginning upon the stairway landing to its fatal end at the foot of the stairway, where the combatants were by some of these onlookers separated, and these witnesses all, with one accord, testify that, while they saw this rough and tumble fight between the appellant and deceased throughout its course and all its stages, no one of them ever saw the accused cut the deceased or even have or display a knife in his hands during the fight. Further, they testified that no one of the crowd of the many onlookers who gathered around the appellant and accused, as they fought, ever took any part in their conflict or so much as touched either one of them, nor did any one of the crowd, or either of the combatants, so far as they saw, have or ever display their possession of any knife or weapon.

Also, the appellant, when testifying in his own behalf, and who was the only defense witness, while giving a somewhat more particular and detailed account as to the provocation given him by the deceased for engaging in this fight with him, testified in the main substantially the same as the Commonwealth witnesses, in that he denied that he had either cut or stabbed the deceased during this fight with him, or that he could have done so, as he then had no knife with which he could have cut him, but, as if by way of accounting for the admitted fact that the deceased was by some one, either the accused or another, stabbed in the back while engaged upon the stairway or floor of the beer room in his fight with the accused, he testified that while he and the deceased were fighting as they stood against the wall of the beer room, he saw his friend, Raymond Coleman, standing back of and nearby the deceased, with his arm raised, brandishing a "dirk" in his hand over the deceased, but could not state whether Coleman had ever in fact struck him with it.

The appellant is the only one of all the witnesses who, when thus testifying in his own behalf, attempts to lift suspicion from himself by casting it upon another party as guilty of the homicide, by having stabbed the deceased or having threateningly displayed a knife as if to stab him.

The accused testified, further, upon his cross-examination, that, on the morning following the killing of the deceased, he left Paducah and fled to Indianapolis, where he stayed for more than a month. In explanation of his admitted flight he testified that he had run off because he was scared, as he had "never been in any murder scrape before"; that when he came back, he had sent word to the officers that he wanted to make a writen statement about his connection with this offense charged against him; and that he did make and sign the following written statement:

"The affiant, James Robert Noah, being duly sworn, says that he is a citizen of Paducah, Kentucky, and is twenty (20) years old. He says that he was present at the time when Paul Bean was stabbed and killed at Tuck Lowe's place about the 30th of May, 1937, and he makes the following statement as to how it happened freely and voluntarily and without any compulsion and without any promise of reward knowing his constitutional rights.

"The affiant says that some difficulty had arisen at the place where they were, and that he started down the steps to go out, but his way was blocked and he was forced to stop. He says that while he was standing there, the said Paul Bean asked him what he was looking at, and affiant told Bean that he didn't mean any offense, but Bean struck at him anyway. Affiant says then he took off his glasses, and he and Bean started fighting with their fists, and fell or rolled down the steps. Affiant says that Raymond Coleman in some way became involved in the fight, and proceeded to start slashing with a large dirk knife. Affiant says that the stab wounds received by the said Paul Bean at that time were inflicted on him by the said Raymond Coleman. Affiant says that he himself was stabbed in the arm at the same time. Affiant says that he did not stab or cut said Paul Bean, and that in fact, he did not even have a knife.

"Affiant states that the reason he left Paducah, after the fight was because he knew that the police were looking for him and he became frightened and left and went up into the State of Indiana at Indianapolis, and that when he returned to Paducah he had his father call Mr. Kelley Franklin to come and get him. Affiant says that the reason for his flight was that it naturally scared him to know the police were seeking him and that he did not want to tell on Raymond Coleman."

Upon further cross-examination, he again stated that he ran off to Indiana because he was scared and also for the reason that he did not want to tell on Raymond Coleman. Further, in describing his fight with the deceased, he stated that, "I had my back to the wall and had my arms around Paul Bean's neck and Raymond Coleman and A. G. Mulligan were over here (indicating). Q. He (Coleman) had a big dirk knife? A. I saw that upstairs before I came down there." Further, he stated that, "I don't know whether Raymond Coleman stabbed him or not, but I saw a knife."

Upon the conclusion of the Commonwealth's evidence, and again at the conclusion of all the evidence, motion was made that the court peremptorily direct the jury to return a verdict acquitting the defendant, which motions were overruled and the case duly submitted upon this evidence to the jury, which thereupon returned a verdict finding the defendant guilty of voluntary manslaughter.

The defendant's motion and grounds for a new trial having been overruled, he appeals, seeking a reversal of the judgment and a new trial upon the following grounds: (1) That the court erred in submitting the question of his guilt to the jury, when there was no proof tending reasonably to sustain the charge against him; (2) that the circumstantial evidence was insufficient to do more than create a suspicion of guilt against him, which was insufficient to alone support his conviction; and (3) that his conviction was here unsupported by any evidence. Because of these alleged errors, he insists he is entitled to be awarded a new trial.

In view of the similar nature of all of these grounds of objection urged they may be considered together, as embraced in the one ground here ably urged and argued by counsel for appellant, that the circum-

stantial evidence heard upon the trial against the accused entitled him to a directed verdict of acquittal in that same did not constitute any evidence sufficient to sustain the jury's verdict of guilty returned against him.

Turning now to a consideration of the merit of these several grounds of objection urged for a reversal of the judgment and the granting to appellant of a new trial, we may first observe that we fully appreciate the skill and labor with which counsel appointed to defend the appellant have, without compensation or other reward, so faithfully and loyally endeavored to discharge the full measure of their duty owing the accused as officers of the court, in so ably presenting his defense, both upon the trial below and by the able briefs here submitted in his behalf.

It may be conceded that the rule is, as urged by counsel for appellant, that where there is no proof tending to reasonably sustain the charge against the accused in a criminal trial the court should instruct the jury to acquit the defendant, and that this rule of practice is, though not found directly in either Code or statute, yet firmly established as a part of the criminal jurisprudence of the state and is uniformly applied by the court in considering appeals in criminal cases, where a reversal is asked because the verdict is flagrantly against the evidence or is not supported by sufficient evidence; and also it may be conceded that the trial judge has the same right and authority to give a peremptory instruction in a criminal proceeding that he has in a civil action; and that, if the evidence introduced in behalf of the Commonwealth fails to incriminate the defendant, or is wholly insufficient to show that he is guilty of the offense charged, it is not only the right, but the duty, of the trial judge to instruct the jury to return a verdict of not guilty. Saylor v. Com., 158 Ky. 768, 166 S. W. 254.

Such being conceded to be the rule, the question arises, was there here any proof tending reasonably to sustain the charge upon which defendant was being tried, and for which he had been indicted, of having murdered the deceased by feloniously and maliciously cutting and stabbing him upon this, the occasion of their fight.

Further, we are in full harmony and agreement

with the rule invoked by appellant's counsel in support of his second contention urged "that one cannot be convicted on suspicion, and that circumstantial evidence to support conviction must do more than point the finger of suspicion at the accused."

While agreeing in this, practically the same question is again raised, under the form of whether or not the evidence, heard upon the trial, is sufficient to support the appellant's conviction or did more than "point the finger of suspicion at the accused."

The circumstantial evidence here introduced upon the trial of the accused was to the effect that he and the deceased met at Lowe's roadhouse, where they almost immediately became engaged in a rough and tumble fight, carrying them in its course from the stairway, where it began, to the wall of the barroom, where it ended, when upon their separation it was then immediately found, and is admitted, that the deceased, Paul Bean, had, during this brief period of time spent in fighting with the appellant, been fatally cut and stabbed in the back. Further, the evidence of all the witnesses is in harmony and undisputed that the only assailant of the deceased in this fight was· the appellant. It shows without contradiction that no other party of the onlookers there present interposed or participated in any way or manner in the struggle being fought out between them, nor was either of the combatants even so much as touched by any of the large crowd assembled and then curiously milling around them.

It is not claimed by anyone, other than the appellant, that any person in the crowd had or displayed a knife upon this occasion, and while appellant too denies that he had a knife or that he cut or stabbed the deceased, the singular circumstance is by such testimony presented to the jury that, although the deceased, it appears, was a well and sound man when he began this conflict with appellant, he came out of it a man fatally wounded by a knife thrust received during this fight in which he and the appellant were the only participants.

This circumstance in itself constitutes some evidence that the deceased had been stabbed by the one foe with whom he had struggled during this period of the conflict between them.

The jury was therefore not bound to believe or ac-

cept as true the statement of the appellant that he had no knife when he fought or of the Commonwealth's witnesses that none of them had seen him have or use a knife, where such testimony was so strongly discredited by the fact, physically evidenced and established, that, during the encounter beween the appellant and Bean, the latter had been fatally stabbed in the back with a knife.

Circumstances are evidence just as facts are, and juries are authorized to so consider the circumstances proved in evidence and to take into account the circumstances, as well as the other facts shown, in arriving at a verdict. Kelly v. Com., 204 Ky. 718, 265 S. W. 285.

Also, another evidential circumstance, constituting some evidence of the defendant's guilt of this homicide, was given the jury in his testimony that, on the morning following the death of his antagonist in this fight, he fled to another state, because he was scared, as he had "never been in any murder scrape before."

This was competent evidence, tending to support an inference of guilt, in that, as stated in Hord v. Commonwealth, 227 Ky. 439, 13 S. W. (2d) 244, 246, "flight is always some evidence of a sense of guilt."

And again we said, in considering the circumstance of the flight of the accused in Fugate v. Com., 202 Ky. 509, 260 S. W. 338, 340, that:

"While the flight or concealment of the accused after the commission of the homicide may be shown as furnishing a presumption of guilt, the accused should be permitted to explain his flight or concealment by showing that he apprehended violence at the hands of persons who would be likely to attack him. Garman v. Com., 183 Ky. 455, 209 S. W. 528. * * * Of course, the circumstances may be such as to afford but little ground for his fears, but that is a matter for the jury to decide."

See, also, Roberson's Criminal Law and Procedure, sec. 242, page 308, where the rule, as to the flight of the accused after commission of a homicide furnishing a presumption of his guilt, is thus stated:

"The flight or concealment of the accused after the commission of the homicide, and the action of the

officers in seeking to arrest him, may be shown as circumstances furnishing a presumption of guilt." See, also, Fallis v. Commonwealth, 197 Ky. 313, 247 S. W. 22.

The jury, in here considering the question of the defendant's guilt of this homicide, as to whether or not it was established by all the evidence introduced and heard by it upon the trial as to the fight had between the parties, as well as the circumstances and facts attending all of its stages, from the beginning to its end, and showing, without contradiction, that the deceased had received, during the brief period of their combat, mortal wounds at the hands of the accused or some other person then present during the fight, had not only the right, but it was its sole province, to appraise and evaluate the credibility of the testimony heard, as well as to draw all reasonable inferences from the circumstantial evidence tending to contradict the testimony that neither the accused nor any other person had a knife upon this occasion, in view of the physical fact that the deceased was there killed by a knife stab in the back then inflicted by someone upon him.

The jury was not required to believe the unreasonable evidence that the deceased had been stabbed by someone else during this affray, even though the testimony was to the effect that no one was at such time seen to have or use a knife. The fact that the deceased at some time during this brief interval was fatally cut in the back by someone, when all the evidence showed that he had only fought with the accused and had been touched by no person other than his assailant, the accused, constituted some legal and competent evidence of probative force, tending to more than "point the finger of suspicion" at the accused as the perpetrator of the homicide, and presents a situation wherein the evidence was not as consistent with the innocence of the accused as with his guilt, thereby making the conviction of the accused rest only upon conjecture. McCall v. Commonwealth, 210 Ky. 336, 275 S. W. 807; Meredith v. Commonwealth, 192 Ky. 378, 233 S. W. 792; Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316.

As was said in Adkins v. Commonwealth, 245 Ky. 503, 53 S. W. (2d) 949, this court should and will not reverse a verdict of guilty sustained by some evidence,

282

although it is against the preponderance of the evidence, Bourne v. Commonwealth, 234 Ky. 842, 29 S. W. (2d) 561,; and again, that a verdict of guilty to be flagrantly against the evidence must be without the support of any evidence, Gilbert v. Commonwealth, 228 Ky. 19, 14 S. W. (2d) 194; Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298; Shepherd v. Com., 236 Ky. 290, 33 S. W. (2d) 4; Fox v. Com., 248 Ky 466, 58 S. W. (2d) 608; Bullock v. Com., 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407.

When these rules and considerations are applied to the facts and circumstances proved and appearing upon the appellant's trial below, we are fully persuaded that the trial court committed no error prejudicial to the substantial rights of appellant in overruling appellant's motion for a peremptory instruction and in submitting the case to the jury.

Judgment affirmed.