## McDaniel v. Commonwealth.

April 21, 1939.

W. E. Begley, Judge.

FINLEY HAMILTON for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Reversing.

The appellant, Colonel McDaniel, a white man 22 years of age, was tried in the Laurel Circuit Court on an indictment charging him with maliciously stabbing J. D. Tinsley, a colored man 62 years of age, with intent to kill him. The trial resulted in a verdict of guilty and the jury fixed appellant's punishment at confinement in the penitentiary for two years.

In his brief appellant assigned three errors for the reversal of the judgment entered on the verdict: 1. The

verdict is flagrantly against the evidence. 2. The court should have given an instruction submitting to the jury the question of whether or not appellant was insane at the time of the stabbing. 3. The misconduct of the commonwealth attorney in persistently asking on cross examination of several witnesses for appellant a question he knew to be incompetent, and one to which the court sustained an objection each time he asked it.

There is so little merit in the argument that the verdict is flagrantly against the evidence we will devote but scant space to its discussion. The testimony of Tinsley is that the appellant was drunk, and while just the two of them were walking along an alley appellant without any provocation or warning stabbed him in the breast with a pocket knife, and while Tinsley screamed with pain and started running from the alley, the appellant pursued him. Appellant testified Tinsley demanded of him the payment of a debt, called him a vile name and slapped him, whereupon he stabbed Tinsley in self-defense. Roscoe Pennington, a friend of appellant and the sweetheart of his sister, who was forty feet from the scene of the difficulty, in his testimony corroborated appellant as to Tinsley slapping appellant before appellant stabbed him.

It is seldom in criminal cases involving a personal difficulty there is no contrariety of the evidence as to how the trouble arose, who was the aggressor and who struck the first blow. The jury sees the parties and their witnesses on the stand and it is the province of the jury to determine which set of witnesses to believe. Where the evidence is merely conflicting, it cannot be said that the verdict of the jury is flagrantly against the evidence just because some witness gave testimony upon which the jury might have returned a verdict different from the one found. Noah v. Com., 273 Ky. 272, 116 S. W. (2d) 315; Webster v. Com., 270 Ky. 180, 109 S. W. (2d) 589.

There is no evidence of appellant being insane at the time he stabbed Tinsley and the court properly refused to give an instruction submitting to the jury this question. Two members of his family, and several of his acquaintances, testified that two years previous appellant had suffered a blow on his head and they did not think he appeared "right" since he received this blow. But not one of these witnesses testified to any observa-

tion made of appellant, or to any facts upon which the conclusion was based that he was of unsound mind so that the jury might judge for themselves what weight such opinions were entitled to. For the testimony of lay witnesses to be competent on the question of insanity, such witnesses must relate to the jury what opportunities they had to observe the persons of whom they are testifying and they must give the facts upon which their opinions are based. Banks v. Com., 145 Ky. 800, 141 S. W. 380; Jones v. Commonwealth, 154 Ky. 752, 159 S. W. 568.

The commonwealth attorney in cross examining appellant asked him if he were not an able bodied man, to which appellant replied that he was not since he received a "lick" on his head some two years before. The commonwealth attorney then asked appellant if he had not received this lick while he was after a man with a butcher knife. The court properly sustained the objection of appellant's counsel to this question, because no evidence of any crime previously committed by appellant and not connected in any manner with the charge upon which he was being tried, was competent on this trial. The next witness was appellant's mother, who testified her son had received a blow on his head and since then he has had "trouble with his head." On cross examination the commonwealth attorney asked her if appellant did not receive this blow while he was after a man with a butcher knife. Appellant's counsel objected to the question and "moved the court to admonish the jury and to continue the case." The court sustained the objection to the question and thus admonished the jury:

> "Any former trouble and hitting in the head, and what he was hit for, is not material here in the trial of this case, and you will not consider that. You are not trying that case."

Nath Fredericks testified appellant "acts queer to me," since he received the blow on the head, and on cross examination the commonwealth attorney asked him if appellant did not receive the blow in a fight. Counsel for appellant objected to the question, which objection the court sustained. Ailsie Ward, a sister of appellant, testified his condition "is not good" since receiving a blow on the head, and the commonwealth attorney asked her upon cross examination if appellant

did not receive that blow in a fight. The court sustained the objection of appellant's counsel to this question. Charley Bowles testified appellant "did not seem like the same kind of boy after he received that lick," and the commonwealth attorney asked him on cross examination if appellant did not receive the lick in a fight. The court sustained the objection of appellant's counsel to the question and immediately thereafter the record shows the following question by the commonwealth attorney and motion by appellant's counsel, and the court's ruling thereon.

"Q. Do you know how it happened? A. No, I do not."

"At this point the defendant moved the court to set aside the swearing of the jury and to continue this case because of the commonwealth's attorney persistently asking questions which have been ruled incompetent by the judge of this court, which motion is overruled by this court, to which ruling of the court the appellant by counsel excepts."

The commonwealth attorney must have known the question was incompetent when he asked appellant if the blow on his head suffered two years before was not received while chasing a man with a butcher knife. If not, he learned it was incompetent when the court sustained appellant's objection thereto. Yet, he persistently asked this question, or it in substance, of each of the four witnesses by whom appellant sought to prove insanity, and he did so in the face of the ruling of the court that the question was incompetent. When Bowles was asked this question there had been four previous rulings by the court that the same was incompetent. It appears to us the commonwealth attorney made a deliberate and persistent attempt to bring to the attention of the jury evidence he knew was incompetent, and which was highly prejudicial to appellant's right to a fair and impartial trial. A commonwealth attorney should not forget he is an officer of the court and should never attempt to deliberately bring before the jury evidence he knows is incompetent, or to get before the jury by an indirect method evidence which the court has excluded. In this instance, the conduct of the commonwealth attorney was not only highly improper towards the appellant, but it was contemptuous to the court, and

the trial judge should have seen to it that the appellant was not thus imposed upon by the commonwealth attorney and that his rulings were adhered to, even though it were necessary for the court to summarily punish the offending attorney.

We will not consume space in quoting from the opinions wherein this court, in forceful language, has dealt with a situation analogous to the one at bar, but it will suffice to cite some of the leading cases on the subject. Shields' Adm'rs v. Rowland, 151 Ky. 136, 151 S. W. 408; Stewart v. Com., 185 Ky. 34, 213 S. W. 185; Jones v. Com., 191 Ky. 485, 231 S. W. 31; Kroger Grocery & Baking Company v. Hamlin, 193 Ky. 116, 235 S. W. 4; Cox v. Com., 251 Ky. 128, 64 S. W. (2d) 481.

Because of the improper conduct of the commonwealth attorney as above set out, we reverse the judgment in this case.