# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0438-MR

SCOTT KENNEDY                                                  APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANN BAILEY SMITH, JUDGE
NOS. 17-CR-001429 & 20-CR-000300

COMMONWEALTH OF KENTUCKY                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Scott Kennedy appeals as a matter of right[1] from the Jefferson Circuit Court's judgment imposing a life sentence after his convictions at a jury trial conducted in three parts, first for murder and fleeing or evading police, second for possession of a handgun by a convicted felon, and third for being a persistent felony offender in the first degree (PFO I). On appeal, Kennedy raises three allegations of error. Following a careful review, we affirm.

On May 6, 2017, Shively Police responded to a call indicating a truck had crashed into a building at the intersection of Seventh and Leroy Streets. Officers discovered the driver, Michael Bosse, had been shot in the abdomen

---

[1] Ky. Const. § 110(2)(b).

causing him to eventually lose consciousness and wreck. Bosse was taken to University of Louisville Hospital where he died later that day.

Bosse's six-year-old daughter was the passenger. Although she had no visible injuries, she was taken to Kosair Children's Hospital. Officers interviewed her at the scene, at the hospital, and at her mother's apartment. She told police "Scott" lived in her father's basement and shot her father after an argument. She also provided information she, her father, "Doug," "Scott," and Scott's daughter "Jennifer" had all been at or around the residence on Nobel Place near the time of the shooting.

Officers went to the residence on Nobel Place looking for possible evidence and witnesses concerning the shooting. They found Doug Quigley hiding in bushes behind a shed. He had one cell phone on him and another was nearby. He was taken into custody for questioning but refused to give a statement on the record. He was released because he did not fit the description of the shooter. Off the record he told Detective Robert Allen that Scott's last name was "Kennedy." Quigley claimed his cell phone, leaving the other at the police station.

Without a search warrant, Detective Mike Kuzma accessed the non-password-protected, unclaimed phone. In the contacts, he found an entry labeled "me" next to the phone number for the cell phone and "Scott Kennedy." The Facebook profile was also opened to Scott Kennedy. That night, after Bosse's death, an arrest warrant was issued. Detective Ronnie Vittitoe also interviewed Bosse's daughter at her mother's apartment. When he showed her

2

a photopack, she identified Scott Kennedy as the man who shot her father.

Detective Allen subsequently obtained an electronically-signed search warrant

at 4:30 p.m. the next day for Kennedy's phone. He retrieved the phone number

of Kennedy's daughter, Jennifer Fowler, from the contacts section. No further

searches of Kennedy's cell phone occurred.

Suspecting Kennedy and Fowler were together based on a tip, Detective

Allen next sought an "exigent ping" of real-time cell-site location information

(CSLI) data[2] containing the latitude and longitude of Fowler's phone's location

from her phone carrier. Officers did not get a search warrant to gather this

information. Detective Allen sent an "Exigent Circumstances Request Form" to

the phone's service provider, T-Mobile. One preprinted part of the form read:

"The urgency of the situation (and/or other factors) renders it unfeasible to

---

[2] The nature of cell phones is:

[c]ell phones perform their . . . variety of functions by connecting to a set
of radio antennas called "cell sites." Although cell sites are usually
mounted on a tower, they can also be found on light posts, flagpoles,
church steeples, or the sides of buildings. . . .

Cell phones continuously scan their environment looking for the best
signal, which generally comes from the closest cell site. Most modern
devices, such as smartphones, tap into the wireless network several
times a minute whenever their signal is on, even if the owner is not using
one of the phone's features. Each time the phone connects to a cell site,
it generates a time-stamped record known as cell-site location
information (CSLI). . . .

Wireless carriers collect and store CSLI for their own business purposes
. . . .

*Carpenter v. U.S.*, 138 S.Ct. 2206, 2211-12 (2018).

obtain a search warrant or probable cause court order. I am requesting that T-Mobile provide the following records and/or service(s) . . . ." On the form, he wrote, "(Detectives just learned of number today) Requested number belongs to homicide's suspect's daughter who we believe to be suspect's accomplice in this case. Suspect and the subscriber to this number fled after shot victim. Subscriber/carrier is the suspect's daughter[.] Suspect still armed and danger to the public[.]" On the request form, Detective Allen checked the box next to "Real-time Location = (Every 15 min up to 48 hrs)."

Officers attempted to locate Kennedy and Fowler. On May 9, 2017, based on a "ping," Detective Rickey Guffey went to a McDonald's parking lot on Taylor Boulevard where a check of a license plate revealed a car registered to Kennedy's other daughter, Angela. Detective Guffey found Kennedy and Fowler together. When he attempted to stop them, they fled in the car.

An elaborate chase ensued. Kennedy sought to elude police by driving through alleys, running traffic lights, and going the wrong way on one-way streets. He brandished a knife and held it to Fowler's neck. At one point, he backed up and rammed Detective Guffey's vehicle. Near the entrance ramp onto the Interstate 65 Abraham Lincoln Bridge which connects Louisville and Indiana, the car he was driving broke down. He tried to flee on foot but was apprehended and did not make a statement to police. Fowler was also taken into police custody and was interviewed, cleared as a suspect, and released.

Officers impounded the car, obtained a search warrant for the car, and found multiple cell phones and a knife, but no evidence connecting Kennedy to the murder. Officers never located the gun used to shoot Bosse.

A grand jury indicted Kennedy on seven counts: murder, possession of a handgun by a convicted felon, assault, two counts of wanton endangerment, fleeing or evading, and criminal mischief. The first two charges were based on events that occurred on May 6, 2017, while the remainder were based on events that occurred on May 9, 2017. Subsequently, Kennedy was charged as being PFO I.

Kennedy maintained his innocence and exercised his right to a trial by jury. He filed pre-trial motions to suppress the warrantless search of his phone as well as the real-time CSLI obtained from Fowler's phone. At a hearing on May 22, 2019, the trial court granted the motion to suppress evidence taken from Kennedy's cell phone before the search warrant was issued. However, at a hearing on August 8, 2019, the trial court found the search warrant valid even without the evidence taken from Kennedy's phone. The trial court denied Kennedy's motion to suppress real-time CSLI obtained from Fowler's phone. Later, Kennedy filed a pre-trial motion to sever the murder charge from other charges. The trial court granted the motion to sever the charge of possession of a handgun by a convicted felon but denied the motion to sever other counts.

Kennedy's jury trial took place over several days. Fowler testified she stayed in a bedroom in the basement at the house on Nobel Place because she had no place to go the night of the shooting. Bosse, Kennedy, and Quigley

5

were staying at the house and had been partying. Bosse was mad at Quigley because Quigley kept telling Bosse cops were there. Fowler awoke to a loud pop which was a gunshot. When she did not hear anything further, she screamed for her father but got no response and did not see him. When she went into the main living area, she saw Quigley laying in the floor. He told her to run. She ran to her bedroom, put on her shoes, and ran to the car. When Kennedy joined her, they drove away.

Fowler's testimony and behavior at trial created drama which Kennedy complains of in this appeal. The Commonwealth confronted Fowler with a statement she gave police on May 9, 2017, in which she asserted she saw her father shoot Bosse with a revolver. She testified she was panicked, angry, and worried about getting her kids from the bus stop when she made the earlier statement. She also mentioned her father had been released from prison about a month earlier and was wanted for a parole violation. During a bench conference regarding her reference to her father having been imprisoned, she collapsed. The trial court quickly called a recess and sent the jury out of the courtroom. EMS responded and took Fowler to the hospital. The defense moved for a mistrial. The trial court withheld ruling until Fowler's status to continue would be better known. The trial court advised the jury Fowler had a medical issue and recessed the trial.

The next day, the trial court denied the motion for a mistrial and inquired of each juror individually what they had seen and whether their observations would affect their ability to be impartial. Twelve jurors saw

6

Fowler on a stretcher, but none indicated the occurrence would affect their ability to remain impartial. Fowler finished her testimony.

Bosse's six-year-old daughter testified her father and Quigley had argued. She heard Kennedy yell for her father to stop arguing and then she saw him shoot her father. Her father then grabbed her, they ran to his truck, and he drove until he passed out and crashed the vehicle into a building.

After six days of trial, Kennedy was convicted of murder and fleeing or evading police. A directed verdict was entered on the assault, criminal mischief, and two wanton endangerment charges. In separate proceedings, Kennedy was convicted of possession of a handgun by a convicted felon and being a PFO I. He was sentenced to life in prison. This appeal followed.

Kennedy alleges three errors. First, the trial court erred by failing to suppress evidence related to the warrantless seizure of real-time CSLI data from his daughter Fowler's cell phone. Second, the trial court abused its discretion by failing to hold separate trials on the murder and the fleeing or evading police charges. Third, the trial court erred by failing to grant a mistrial based on the behavior and statements of Fowler during her testimony.

Kennedy first argues the trial court erred by failing to suppress evidence related to the warrantless seizure of real-time CSLI data pertaining to Fowler's cell phone. He asserts he had a reasonable expectation of privacy in his location and movements which officers ascertained through the warrantless search of his daughter's cell phone. He further contends his case should be

7

remanded for the trial court to determine whether exigent circumstances existed.

> Our standard of review of a pretrial motion to suppress is twofold.
>
> First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.

*Whitlow v. Commonwealth,* 575 S.W.3d 663, 668 (Ky. 2019) (quoting *Simpson v. Commonwealth,* 474 S.W.3d 544, 547 (Ky. 2015)).

In *Carpenter,* the United States Supreme Court considered for the first time whether the Fourth Amendment requires law enforcement to obtain a search warrant to receive *historical* CSLI about an individual's phone. It does. 138 S.Ct. at 2206. However, the Supreme Court did not directly address whether law enforcement could obtain *real-time* CSLI without a warrant nor whether "'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 2222 (quoting *Kentucky v. King,* 563 U.S. 452, 460 (2011)).

In declining to broaden the scope of who can claim Fourth Amendment protections, the United States Supreme Court has held Fourth Amendment rights against unreasonable searches and seizures are personal rights and cannot be vicariously asserted, *Rakas v. Illinois,* 439 U.S. 128, 133 (1978) (citing *Alderman v. United States,* 394 U.S. 165 (1969)), and

8

[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Id.* at 134 (citations and endnote omitted). The United States Supreme Court has developed a two-step analysis for determining whether a reasonable expectation of privacy exists.

The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy,—whether, in the words of the *Katz* [*v. United States*, 389 U.S. 347 (1969)] majority, the individual has shown that he seeks to preserve [something] as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable,—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is justifiable under the circumstances.

*Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations and internal quotations omitted).

We cannot say Kennedy possessed a reasonable expectation of privacy in the transmission of electronic signals from the cell phone of a third party, his daughter, Fowler, indicating its location and movements. Kennedy and Fowler were murder suspects who had fled the scene and were believed to be armed. They were not found until three days later in a car in a McDonald's parking lot. The trial court reasonably noted "one's cellphone [sic] often contains private information that one would not want to share with others without express permission, even one's own father. An unsupported statement that the

9

Defendant . . . can access his daughter's cell phone at will is not an assumption that this Court is willing to make." Kennedy failed to show any control over the cell phone or its contents. He did not have the legal right to exclude others from exercising possession or control over the cell phone. For these reasons, Kennedy did not demonstrate a reasonable expectation of privacy. The trial court's findings were supported by substantial evidence and are not clearly erroneous.

Next, Kennedy argues the trial court abused its discretion by failing to hold separate trials on the murder and the fleeing or evading charges. On December 5, 2017, Kennedy filed a pre-trial motion to sever all of his other charges from the murder charge. The trial court granted the motion to sever the convicted felon in possession of a handgun charge from the murder charge, both of which were allegedly perpetrated on May 6, 2017. The trial court did not sever other charges from the murder charge, each allegedly having occurred on May 9, 2017, three days after the murder.

Kennedy's jury trial was held on February 25 and 28, 2020, and March 2 and 3, 2020. He was initially tried for murder, assault, two counts of wanton endangerment, criminal mischief, and fleeing or evading. After being found guilty of the murder and the fleeing or evading charges, he was next convicted on the possession of a handgun by a convicted felon charge prior to being found to be a PFO I. The jury recommended that all sentences run consecutively but, after a presentence investigation and hearing, the trial court ran the sentences concurrently, imposing a life sentence.

10

RCr[3] 6.18 allows the joinder of multiple offenses if they "are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme." Pursuant to RCr 8.31 though, "the courts shall order separate trials of counts . . . or provide whatever other relief justice requires" if it appears joinder will result in prejudice to either the defendant or the Commonwealth. Trial courts are in the best position to strike a proper balance between any prejudice arising from addressing separate charges in a single proceeding and the competing interest of judicial economy. For this reason, appellate courts have long afforded trial courts broad discretion in handling joinder issues. *Murray v. Commonwealth*, 399 S.W.3d 398 (Ky. 2013). With respect to joinder, a trial court

> will not be overturned in the absence of a showing of prejudice and a clear abuse of discretion. A criminal defendant is not entitled to severance unless he positively shows prior to trial that joinder would be unduly prejudicial. "Offenses closely related in character, circumstances[,] and time need not be severed." If evidence from one of the offenses joined in the indictment would be admissible in a separate trial of the other offenses, the joinder of offenses generally will not be prejudicial.

*Cohron v. Commonwealth*, 306 S.W.3d 489, 493 (Ky. 2010) (citations omitted).

Kennedy argues the crimes of the murder of Bosse on May 6, 2017, and the fleeing or evading from the McDonald's parking lot on May 9, 2017, are distinct crimes and cannot be considered closely related because the murder did not arise from the fleeing or evading. While maintaining he did not shoot Bosse, Kennedy asserts he was prejudiced when the jury saw him disregarding

---

[3] Kentucky Rules of Criminal Procedure.

11

traffic signs and signals, speeding in town, driving the wrong way down one-way streets, and crashing into police vehicles. Kennedy's tires were blown out and parts lost, with the vehicle coming to a stop only when the motor died. Kennedy also argues he was prejudiced on the murder charge when the jury heard he held a knife to his daughter's throat and had to be tackled and tazed twice before being taken into custody. Kennedy asserts the level of prejudice he suffered as a result of these errors is evidenced by the maximum sentence the jury imposed.

The Commonwealth counters "[i]t has long been held that proof of flight to elude capture or prevent discovery is admissible because flight is always some evidence of a sense of guilt." *Rodriguez v Commonwealth*, 107 S.W.3d 215, 218 (Ky. 2003) (citations and internal quotation marks omitted). Further, it asserts evidence of flight is relevant under KRE[4] 401 because it tends to make the existence of the defendant's guilt more probable. *Id.* at 219. Finally, the Commonwealth argues when a person "after the commission of a crime flees from a place, and either evades or actively resists arrest, all facts and circumstances showing the evasion or resistance of arrest even though they disclose the commission of another crime" are admissible in a trial for the first offense. *Cherry v. Commonwealth*, 458 S.W.3d 787, 795 (Ky. 2015) (quoting *Fallis v Commonwealth*, 197 Ky. 313, 247 S.W. 22, 24 (1923)).

> Immediacy is generally only relevant, however, where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him at the

---

[4] Kentucky Rules of Evidence.

time of his flight . . . . Where it is clear the defendant is
aware of the charges against him, the immediacy factor is
not required to show consciousness of guilt.

*United States v. Oliver,* 397 F.3d 369, 376-77 (6th Cir. 2005) (citations and

internal quotation marks omitted). Evidence only needs to be minimally

probative of a fact of consequence to be relevant. *Cherry,* 458 S.W.3d at 799.

We conclude the evidence of flight in this case was relevant to show

Kennedy's sense of guilt. Thus, because Kennedy failed to show actual or

undue prejudice warranting reversal, the trial court did not err in allowing

admission. *Peacher v. Commonwealth,* 391 S.W.3d 821, 838 (Ky. 2013)

(citations omitted). In *Kinser v. Commonwealth,* 741 S.W.2d 648, 653 (Ky.

1987), this Court held the appellant's argument about what the jury's

reasoning was for giving him the maximum penalty was simply speculation

unsupported by any fact in the record. The same logic applies here. There was

no error.

Finally, Kennedy argues the trial court erred by failing to grant a mistrial

based on Fowler's behavior and numerous inflammatory and prejudicial

statements made during her testimony. Kennedy raises five specific instances,

of alleged prejudicial behavior or statements by Fowler, including: her

emotional collapse during her cross-examination by the Commonwealth

accompanied by no admonishment from the trial court for jurors to not

consider the incident; her testimony she suffered post-traumatic stress

disorder as a result of emotional and sexual abuse she experienced in her

childhood during which her father was not around; her testimony her father

13

had been released from prison about a month prior to the shooting; her testimony Kennedy did not want to be questioned by police because he faced a parole violation; and her testimony calling Kennedy her "retarded ass dad." Of these five allegedly prejudicial instances, only two were raised before the trial court and only one was preserved. To the extent any specific instance is not preserved by contemporaneous objection, Kennedy requests this Court review for palpable error.

The first incident complained of by Kennedy pertained to Fowler's emotional reaction and physical collapse while defense counsel and the Commonwealth were involved in a bench conference held during the Commonwealth's cross-examination. Defense counsel had objected to Fowler's unsolicited testimony that Kennedy had failed to surrender to authorities for fear of facing a parole violation. After the attorneys approached for a bench conference, defense counsel mentioned she failed to object earlier to Fowler's statement Kennedy had been released from prison a month before the shooting because she did not want to draw attention to it. The judge decided to adjourn court to decide what to do during a break. When the jurors began to exit the courtroom, Fowler experienced a panic attack, collapsed in the jury's presence, and was subsequently seen being transported out of the courtroom on a stretcher.

Upon occurrence of this incident, defense counsel abandoned her objection to Fowler's statement and moved for a mistrial, citing an unpublished

case[5] in which this Court acknowledged a witness's medical condition may sometimes improperly arouse sympathy from jurors. However, the trial court elected to adjourn the proceedings, delaying any ruling until the next day.

When trial resumed the next morning, the trial court did not address defense counsel's original objection. Instead, at defense counsel's request, the trial court individually questioned jurors to determine whether Fowler's emotional collapse the previous day had affected their ability to decide the case impartially. Because none of the jurors were found to have been impacted by the incident, the trial court offered no admonishment, and none was requested. On appeal, however, defense counsel now contends an admonishment was required.

In explaining her request for a mistrial based on Fowler's emotional collapse, defense counsel stated to the trial court the basis of her motion was the impairment of her ability to provide effective assistance of counsel due to being precluded from effectively examining Fowler because of Fowler's health issues, fragility, and sympathetic condition. In relation thereto, defense counsel also asserted Fowler's condition prevented Kennedy from concentrating on his own defense due to concerns regarding his daughter's physical and emotional status.

In this appeal, Kennedy first asserts the trial court erred in denying a mistrial arising from the prejudicial impact on the jury's impartiality caused by

---

[5] *Cornett v. Commonwealth*, 2018-SC-000658-MR, 2020 WL 1846886 (Ky. Mar. 26, 2020).

Fowler's collapse. "[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a manifest necessity for such an action." *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citation and internal quotation marks omitted). "[T]he decision to grant a mistrial is within the trial court's discretion and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Id.* (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, after individually examining the jurors as requested, the trial court was satisfied none were improperly influenced by Fowler's emotional collapse. Thus, we hold the record demonstrates the trial court did not abuse its discretion in denying Kennedy's motion for a mistrial based on any prejudicial jury impact arising from Fowler's collapse.

Next, Kennedy asserts the trial court committed reversible error in failing to admonish jurors to disregard Fowler's collapse when weighing her testimony and adjudicating his guilt. Because this argument was unpreserved, our analysis is based on palpable error. Where an error has not been sufficiently raised or preserved for appellate review, RCr 10.26 allows this Court to consider the alleged misstep under the palpable error standard. "What a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been

16

different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citation and internal quotation marks omitted).

Here, even though defense counsel made no request for an admonishment regarding any impact on jury deliberations related to Fowler's collapse, and though the trial court's individual questioning of the jurors did not explicitly admonish jurors not to consider the incident, the trial court's questioning nevertheless communicated an admonishment by implication. This Court has no reason to believe there is a substantial possibility that the result in the case would have been any different had Kennedy sought an admonishment and had the trial court explicitly admonished the jury. *Id.* For this reason, we hold there was no error.

Kennedy's remaining arguments asserting reversible error by the trial court in denying a mistrial based on Fowler's other allegedly inflammatory and prejudicial statements were all likewise unpreserved, requiring palpable error analysis. First, Fowler volunteered she suffered from post-traumatic stress disorder as a result of her childhood during which her father was not around and she was subjected to emotional and sexual abuse. Second, she testified her father had been released from prison a month before the shooting. Third, she stated her "retarded ass dad" stuck a knife to her throat during the pursuit. Fourth, and related to the initial incident, she stated her father did not want to surrender to authorities because he faced a parole violation for failure to report for probation and parole supervision.

Kennedy claims Fowler's remarks about his lack of involvement in her

17

childhood were irrelevant and prejudicial. We hold any prejudicial effect arising from those remarks would be slight, requiring no mistrial.

Likewise, with Kennedy's claims of prejudice relative to Fowler referring to him as a "retarded ass dad" after she testified he stuck a knife to her throat during the pursuit, and from her mentioning he had been released from prison about a month prior to the shooting and did not want to surrender to authorities because he would have faced a parole violation for failing to report to his probation and parole officer, Kennedy similarly has not presented the requisite showing of prejudice to cause a substantial possibility the result in the case would have been different without the testimony. Fowler was neither the most consistent nor most credible of witnesses, and her referenced remarks were made in the context of attempting to provide an explanation for inconsistent statements she gave. Again, we hold the trial court committed no error in denying a mistrial based on any or all of these statements.

Finally, as in *Kinser,* 741 S.W.2d at 653, Kennedy's argument that the alleged prejudicial nature of Fowler's collapse and statements are reflected in the jury giving him the maximum penalty is simply speculation unsupported by any fact in the record. In addition to Fowler's testimony, the murder victim was fatally shot in front of an eyewitness, his six-year-old daughter, who positively identified the shooter. Also, law enforcement officers testified regarding their thorough investigation and the extensive efforts exerted to arrest Kennedy. Evidence of Kennedy's guilt was overwhelming, and Kennedy

18

has not shown the outcome at trial would have been different without Fowler's statements and her collapse.  Thus, we reject Kennedy's argument.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Kate Hatheway
Assistant Public Defender
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:
Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant  Attorney General